UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| DAWN ELAYNE SEIF, ET AL, | : |  |
|---|---|---|
| Plaintiff, | : | NO. 3:16-CV-00315-JWD-EWD |
| VERSUS | : |  |
| STATE OF LOUISIANA THROUGH THE MILITARY DEPARTMENT AND LOUISIANA NATIONAL GUARD, | : |  |
| Defendant. | : |  |

**SUPPLEMENTAL MEMORANDUM OF DEFENDANT
IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**

The Military Department, State of Louisiana[1] ("Defendant") respectfully submits this supplemental memorandum in opposition to Plaintiffs' Motion To Remand (the "Motion") in compliance with this Honorable Court's Notice and Order of September 30, 2016 (R. Doc. 13). In the Notice and Order, the Court ordered the parties to submit additional briefs on the issue of the employment status of the National Guardsmen involved in the subject incident and on the issue of the proper person to receive service of process under La. R.S. § 39:1538(4). As set forth more fully below, this Court has subject matter jurisdiction pursuant to 28 U.S.C. 1331 because at all relevant times, the Louisiana National Guard aircrew that was piloting the subject helicopter and whose actions have been called into question by this litigation were full-time federal employees acting in a duty status authorized by 32 U.S.C. 502. Furthermore, the Louisiana Governor is the proper person to receive service on behalf of the Office of Risk

---

[1] Plaintiffs named as parties defendant both "State of Louisiana through the Military Department State of Louisiana" and "Louisiana National Guard." However, pursuant to La. R.S. 29:1, the Louisiana National Guard is a component of the Military Department, State of Louisiana, and thus there is only one proper defendant to the suit.

Management ("ORM) under La. R.S. 39:1538(4), and thus removal was timely under 28 U.S.C. 1446. Plaintiffs' Motion should be denied.

I. **The MOJO69 Crewmen Were Engaged in Training Under Title 32 And Were Full-Time Federal Employees in Federal Service at the Time of the Incident.**

    a. Statutory and Regulatory Framework of the National Guard

The National Guard, a reserve component of the United States Armed Forces, has a unique, hybrid federal-state status within the military. Soldiers in the Guard are members of both the applicable state's National Guard (in this case, the Louisiana Army National Guard, or "LAARNG") and of the Army National Guard of the United States, and they move in and out of a variety of both state and federal duty statuses depending on the missions to which they are assigned. For example, when Guardsmen are "federalized" to active Federal Service, they do so as members of the Army National Guard of the United States pursuant to 10 U.S.C. 12301 *et. seq*. and are said to be in "Title 10 status." They can also be called to State Active Duty pursuant to state law by their respective state governors, often in response to natural or man-made disasters. And when not in Title 10 or State Active Duty status, Guardsmen can be in Full-Time National Guard Duty or Inactive Duty status, both of which are authorized by Title 32 of the United States Code. "Title 32 status" is the primary duty status that most Guardsmen will be in while performing their routine training, missions, and day-to-day operations. Green Aff., para. 10. The chart and table that are part of Exhibit "C" to the Affidavit of Lt. Col. Randy S. Green clearly show the different types of state and federal duty statuses for members of the Guard and other reserve components of the military and the legal authority for the various statuses. Green Aff., paras. 8-10, ex. C, pp.11, 22. National Guard Regulation 350-1 contains a more detailed table showing all of the specific training and duty statuses that apply to the National Guard. Green Aff., ex. B, pp.9-10.

The chart and table in Exhibit "C" also show that a significant component of Title 32 Inactive Duty is Inactive Duty Training ("IDT") pursuant to 32 U.S.C. 502(a). Inactive Duty Training consists of regularly scheduled unit training periods and includes the familiar weekend and two-week training that all Guardsmen regularly engage in. Green Aff., paras. 8-10, ex. C, pp.11-13, 22. Inactive Duty Training covers all types of training and exercises provided to soldiers and airmen in the National Guard and includes several specific sub-categories of IDT, including a sub-type known as Additional Flight Training Periods ("AFTP"). Green Aff., para. 6, ex. C, p.13. AFTP duty status is authorized for conducting aircrew training and combat crew qualification training to attain and maintain aircrew flying proficiency and sustain required readiness. *Id.* National Guard Regulation 350-1 includes a more detailed table showing all of the specific types of IDT, including AFTP. Green Aff., ex. B, pp.10-11.

Federal statutes also specifically and expressly recognize that Inactive Duty Training (which includes AFTP duty status) is a form of federal, not state, service. "For the purposes of laws providing benefits for members of the Army National Guard of the United States and their dependents and beneficiaries … inactive-duty training performed by a member of the Army National Guard of the United States in his status as a member of the Army National Guard, in accordance with regulations prescribed under section 502 of title 32 or other express provision of law, shall be considered inactive-duty training <u>in Federal service</u> as a Reserve of the Army." 10 U.S.C. 12602(a)(3) (emphasis added).

In this case, Louisiana Army National Guard UH-60M helicopter ("MOJO69") crashed into Santa Rosa Sound near Hurlburt Field, Florida on March 10, 2015. At the time of the incident, MOJO69 was participating in a training mission to provide support to units of the United States Marine Corps Forces Special Operations Command. In addition to the four

Louisiana National Guard crewmen, seven active duty Marines were aboard MOJO69; all eleven men perished in the incident, and Plaintiffs are survivors of five of the Marines who were aboard MOJO69. Plaintiffs allege that the cause of the crash was disorientation of the MOJO69 pilot and co-pilot due to thick fog and poor visibility. Pls. Petition at para. VI. Both the pilot and co-pilot, along with the other members of the aircrew, were members of the Louisiana Army National Guard. Green Aff., para. 3. And, as the Green Affidavit and exhibits clearly demonstrate, the MOJO69 pilots and aircrew were in AFTP duty status, which, as previously shown, is a sub-category of Title 32 Inactive Duty Training. Green Aff., para. 4, ex. A.

In summary, the MOJO69 pilots and aircrew whose actions are the subject of this litigation were full-time federal employees who were in a Title 32 AFTP/IDT training status at the time of the training mission and incident that are the subject of this litigation.

      b. <u>Federal Case Law Demonstrates that the Louisiana National Guardsmen Performing Training Activities in Title 32 Status are Federal Employees.</u>

The jurisprudence is clear that soldiers performing training activities in AFTP duty status, like the MOJO69 crewmembers in the present case, are serving in their federal capacity. *See, e.g.,* <u>U.S. ex rel. Conover v. Anthony</u>, 781 F. Supp. 2d 257, 263 (D. Md. 2011) (stating that the statutory scheme governing the training of state guardsmen "supports the contention that the defendants were serving in the federal, not state, capacity when conducting their AFTPS."). In *Conover*, the district court specifically held that members of the Maryland Air National Guard performing training flights that were conducted as part of Inactive Duty Training in AFTP status – just like the MOJO69 crewmen – were federal employees even though they – like the MOJO69 crewmen – had not been actively called into federal service. *Id*. Although *Conover* involved the Air National Guard and the MOJO69 aircrew members were Army National Guard, the Title 32/IDT/AFTP analysis is identical.

As noted by the court in *Conover*, the FTCA has laid to rest any question as to whether Guardsmen engaged in training under Title 32 are federal employees. The FTCA defines "federal employees" to expressly include "**members of the National Guard while engaged in training or duty under section . . . 502. . . of title 32**." 28 U.S.C. § 2671 (emphasis added). Thus, federal courts consistently hold that Guardsmen engaged in training or duty under Tile 32 are employees of the federal government for purposes of the FTCA even when they have not been actively called into federal service. *See, e.g.*, Dillon v. State of Miss., Military Dep't, Army Nat. Guard, 827 F. Supp. 1258, 1263 (S.D. Miss. 1993) (holding that Mississippi National Guardsmen performing helocasting training exercises similar to the MOJO69 training mission were engaged in training pursuant to 32 U.S.C. 502 and were thus federal employees under the FTCA). *See also* Roach v. U.S. Air Force, No. CIV. A. 92-0961, 1993 WL 370627, at *2 (E.D. La. Sept. 13, 1993) (holding that National Guardsmen assisting in a community project during the time of their unit's monthly training were engaged in Section 502 training under Title 32 and thus were covered by the FTCA).

Matreale v. New Jersey Dept. of Military & Veterans Affairs, 487 F.3d 150 (3d Cir. 2007), is particularly relevant to the present matter. The plaintiff in *Matreale*, just like the MOJO69 plaintiffs, was in a Title 32 duty status. The *Matreale* plaintiff, just like the MOJO69 plaintiffs, chose not to assert claims against individuals under the FTCA and chose instead to limit his claims to the state agency that oversees the National Guard (the New Jersey Department of Military Affairs in *Matreale*, the Military Department, State of Louisiana in the present matter). Just like the MOJO69 plaintiffs, the plaintiff in *Matreale* chose to limit his claims specifically to state law. And just like the MOJO69 plaintiffs, the plaintiff in *Matreale* filed his suit in state court (where it was subsequently removed to federal court). Yet despite the

*Matreale* plaintiff's attempt to circumvent the FTCA, the district court and the Third Circuit held that the Guardsman, being in a Title 32 duty status, was a federal employee even as to the state law claims. The district court went on to hold that the plaintiff's state law claims against the state agency were barred by the *Feres* doctrine and that the agency was entitled to summary judgment. The Third Circuit affirmed.

      c. <u>For Purposes of Resolving Subject Matter Jurisdiction Only, it is Clear the MOJO69 Crewmen Were Acting Within the Scope of Their Federal Employment.</u>

In the September 30 Notice and Order, this Honorable Court ordered the parties to address the issue whether the Guardsmen were within the scope of their federal employment at the time of the incident.

With all due respect to this Court, the Fifth Circuit has held that in the context of the FTCA, a claim may not be dismissed for lack of subject matter jurisdiction based upon the question of whether a defendant was within the scope of employment where the resolution of this factual issue is intertwined with the merits of the underlying federal cause of action. <u>Montez v. Dep't of Navy</u>, 392 F.3d 147, 151 (5th Cir. 2004). The *Montez* plaintiffs asserted FTCA claims against the Department of the Navy arising out of an automobile accident. The district court granted a Rule 12(b)(1) motion and dismissed the complaint based on the court's finding that the driver of the vehicle was not acting within the scope of his employment at the time of the accident. *Id*. at 149. The Fifth Circuit reversed, however:

> Where issues of fact are central both to subject matter jurisdiction and the claim on the merits, we have held that the trial court must assume jurisdiction and proceed to the merits. … Therefore, we follow our general rule in holding that a jurisdictional attack intertwined with the merits of an FTCA claim should be treated like any other intertwined attack, thereby making resolution of the jurisdictional issue on a 12(b)(1) motion improper.

*Id*. at 150.  In the present case, the *Seif* plaintiffs allege that the State of Louisiana is vicariously liable for the actions of the MOJO69 aircrew, and thus the issue whether or not the crewmen were acting within the scope of their employment goes directly to the merits of the case and impacts the determination whether or not the State is vicariously liable.  There will undoubtedly be extensive written discovery and deposition practice regarding the planning that went into the joint training mission (both by the Marines and the Louisiana Army National Guard), the specific role that was to be played by the MOJO69 crew, and the facts and circumstances leading up to the incident itself.  Plaintiffs should not be able to defeat the Court's subject matter jurisdiction at this very early stage, when there has been no discovery at all, with an intensely factual argument that goes directly to the merits of their claim.  Accordingly, under *Montez*, this Court should assume subject matter jurisdiction and proceed to the merits.  *See also* <u>Green v. Hill</u>, 954 F.2d 694 (11th Cir.1992).[2]

Subject to its argument that a determination of scope of employment is improper at this early stage of the litigation, and reserving its right to potentially revisit the issue at a later stage on the merits of the case as additional facts come to light during the course of what will undoubtedly be voluminous discovery, Defendant contends it is clear beyond doubt that the MOJO69 crewmen were acting within the scope of their federal employment at the time of the incident, and thus the Court has subject matter jurisdiction.  The aircrew was in Title 32 AFTP duty status at the time of the incident and participating in a carefully scripted joint training exercise that, as the Plaintiffs' themselves allege, had been in the planning stages for months.

---

[2] The *Montez* suit was apparently originally filed in federal court, and thus the issue of subject matter jurisdiction arose in the context of a Rule 12(b) motion.  Whereas in the present matter, the case was removed from state court and the issue of subject matter jurisdiction arises in the context of a motion to remand.  However, the issues are the same.

Pls. Petition at para. III; Green Aff., paras. 3-4. Plaintiffs also acknowledge that the Florida training mission had been reviewed and approved in advance by the Louisiana Army National Guard and that the crews had been authorized to leave Louisiana and participate in this training mission in the state of Florida. Pls. Petition at para. IX. And Plaintiffs also acknowledge that the Guardsman and Marines had already participated in several successful training exercises earlier in the day. Pls. Petition at para. III. At the time of the incident, the MOJO69 crew was simply carrying out their pre-defined role in a training exercise (one of several taking place over several days in Florida) that was squarely in the scope of what had been jointly planned for months between the Louisiana Army National Guard and the United States Marine Corps Forces Special Operations Command. Furthermore, they were doing so in a Title 32 duty status. The Court has subject matter jurisdiction and Plaintiffs' Motion should be denied.

**II.     The Louisiana Governor is the Proper Person to Receive Service on Behalf of ORM.**

For purposes of determining whether a defendant has timely removed an action within thirty days of service, the Fifth Circuit has stated that the term "service of process" is defined by state law. Benson v. Family Health Ctr. Inc., 339 F. App'x 486, 487 (5th Cir. 2009) (citing City of Clarksdale v. BellSouth Telecomms., Inc., 428 F.3d 206, 210-11 (5th Cir. 2005)). In tort claims against the State of Louisiana, La. R.S. 39:1538(4) requires that "process shall be served upon the head of the department concerned, the office of risk management [ORM] and the attorney general." (Emphasis added). Applying this provision, Louisiana courts have found that service is not effective until all three entities have been served. *See, e.g.,* Burnett v. James Const. Grp., 2010-2608 (La. 7/1/11), 66 So. 3d 482, 485; Calbert v. Batiste, 2012-852 (La. App. 3 Cir. 2/6/13), 109 So. 3d 505, 508. For example, in *Burnett v. James Const. Group*, the Louisiana Supreme Court found that service on merely the Attorney General was incomplete where the

plaintiff failed to also request service on the defendant state agency and on ORM. *Burnett*, 66 So. 3d at 485. Thus, Louisiana law is clear that where service is required upon multiple entities or persons under La. R.S. 39:1538(4), service is not complete until the head of the respective state department, the Attorney General, <u>and</u> the ORM are served. *See also* <u>Marcell v. Toyota Motor N. Am.</u>, Inc., 2011-1072 (La. App. 3 Cir. 2/1/12), 84 So. 3d 757, 760.

As it relates to the ORM, Louisiana jurisprudence has specifically held that service on the Office of the Governor is required to effect service on the ORM. In <u>Woods v. State, Department of Health and Hospitals</u>, 2008–0257 (La. App. 1st Cir. 6/6/08), 992 So.2d 1050, a recent case from the Louisiana First Circuit Court of Appeal, the appellate court recognized that the ORM is an office that was created and that exists within the Division of Administration, which is a department of the Executive Branch under the Office of the Governor. *See* La. R.S. 36:4(B)(1)(a). Thus, the Louisiana First Circuit held that "<u>the Governor was the proper person to receive service on behalf of the Office of Risk Management</u>." *Id*. at 1056 (emphasis added). In this case, complete service on the State of Louisiana was not achieved until the ORM was effectively served through the Governor with citation and service of process on April 7, 2016. Because the thirtieth day from effective service would have been Saturday, May 7, 2016, a legal holiday, the Defendant's Notice of Removal filed on Monday, May 9, 2016, the next day that was not a legal holiday, was indeed timely. *See* F.R.C.P. 6(a); 28 U.S.C. 1446.

### III. <u>Conclusion</u>

The MOJO69 crewmen were all full-time federal employees and were in a Title 32 duty status at the time of the incident. Thus, they were federal employees under the FTCA and this federal district court has exclusive jurisdiction over Plaintiffs' tort claims. Moreover,

Defendant's Notice of Removal was procedurally proper and timely. Accordingly, Plaintiffs' Motion to Remand should be denied.

Respectfully submitted,

**JEFF LANDRY**
**ATTORNEY GENERAL**

By: s/John P. Murrill
    Harry J. Philips, Jr., Bar # 2047
    John P. Murrill, Bar # 23878
    Ne'Shira D. Millender, Bar # 35919
    TAYLOR, PORTER, BROOKS & PHILLIPS, LLP
    Special Assistant Attorney General
    450 Laurel Street, 8th Floor (70801)
    P.O. Box 2471
    Baton Rouge, LA 70821-2471
    Telephone:  (225) 387-3221
    Facsimile:   (225) 346-8049

    **Attorneys for THE LOUISIANA DEPARTMENT OF MILITARY AFFAIRS AND THE LOUISIANA NATIONAL GUARD**

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2016, a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to John W. Redmann and Richard L. Root by operation of the court's electronic filing system.

        **JEFF LANDRY**
        **ATTORNEY GENERAL**

        By: s/John P. Murrill_____
        Harry J. Philips, Jr., Bar # 2047
        John P. Murrill, Bar # 23878
        Ne'Shira D. Millender, Bar # 35919
        TAYLOR, PORTER, BROOKS & PHILLIPS, LLP
        Special Assistant Attorney General
        450 Laurel Street, 8th Floor (70801)
        P.O. Box 2471
        Baton Rouge, LA 70821-2471
        Telephone:  (225) 387-3221
        Facsimile:   (225) 346-8049
        E-mail: john.murrill@taylorporter.com